## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| 501 School Street, S.W., Suite 500 | ) | |
| Washington, DC 20024, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES SENATE | ) | |
| The Capitol Building | ) | |
| Washington, DC 20510, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| EMILY REYNOLDS, in her official | ) | |
| capacity as SECRETARY OF THE | ) | |
| UNITED STATES SENATE, | ) | |
| The Capitol Building | ) | |
| Washington, DC 20510, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILLIAM H. PICKLE, in his official | ) | |
| capacity as SERGEANT AT ARMS | ) | |
| OF THE U.S. SENATE, | ) | |
| The Capitol Building | ) | |
| Washington, DC 20510, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF

Plaintiff, Judicial Watch, Inc., hereby sues the United States Senate, the Secretary of the

United States Senate and the Sergeant at Arms of the United States for declaratory and injunctive

relief, and as grounds therefor alleges as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).

## PARTIES

3.      Judicial Watch, Inc. is a non-profit educational foundation organized under the laws of the District of Columbia and having its principal place of business at 501 School Street, S.W., Suite 725, Washington, DC 20024.

4.      Defendant United States Senate is one of two legislative chambers that comprise the United States Congress and, as such, is an integral part of the United States Government.  The United States Senate has its principal place of business at The Capitol in Washington, DC.  The United States Senate is required by the United States Constitution to give its advice and consent to the President of the United States on the appointment of judges to the Courts of the United States.

5.      Defendant Emily Reynolds is the Secretary of the United States Senate.  Ms. Reynold's principal place of business is at The Capitol in Washington, DC.  She is being sued in her official capacity.  The duties and responsibilities of the Secretary of the United States Senate include legislative, financial and administrative functions.

6.      Defendant William H. Pickle is the Sergeant at Arms of the United States Senate.  Mr. Pickle's principal place of business is at The Capitol in Washington, DC.  He is being sued in his official capacity.  The Sergeant at Arms of the United States Senate serves as the executive officer of the Senate for enforcement of all Senate Rules.

## COUNT I

5.      Judicial Watch, Inc. is a non-profit, tax-exempt educational foundation organized to increase public understanding of the operations of government and to restore ethics and morality to our nation's public life.  Judicial Watch, Inc. utilizes the civil litigation process to obtain and disseminate information to the public in furtherance of its educational mission.

6.      Judicial Watch, Inc. also utilizes the civil litigation process as a means of exercising its First Amendment rights.  Judicial Watch, Inc. prosecutes lawsuit, on its own behalf and on behalf of clients, to highlight and inform the public about issues Judicial Watch, Inc. believes are of public importance and to hold public officials accountable.

7.      Since its inception in 1994, Judicial Watch, Inc. has filed more than one hundred lawsuits in state and federal courts across the country in furtherance of its educational mission. Judicial Watch, Inc. thus has a concrete and particularized interest in the timely and efficient functioning of the judiciary, including the appointment of the full number of judges provided for by 28 U.S.C. § 44.

8.      Headquartered in Washington, DC, Judicial Watch, Inc. files the majority of its lawsuits in federal court in the District of Columbia.  It currently has approximately forty-five (45) lawsuits pending in the federal courts of the District of Columbia, including at least eight matters pending before  the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit").  It also has had a substantial number of matters pending before the D.C. Circuit in the past.

9.      On information and belief, Judicial Watch, Inc. is second only to the United States Government as the entity with the largest number of cases pending before the federal courts of the District of Columbia.

10.     Judicial Watch, Inc. also has a significant number of lawsuits pending in federal courts across the United States, including *Stephens v. Haliburton*, No. 3-02CV1442-L, pending in the U.S. District Court for the Northern District of Texas, and *Wilt v. Fastow*, No. H-02-0576, pending in the U.S. District Court for the Southern District of Texas.  Both district courts are within the jurisdiction of the U.S. Court of Appeals for the Fifth Circuit ("Fifth Circuit").

11.     The federal courts of the United States currently are experiencing a significant number of vacancies in federal judgeships.  On or about November 7, 2002, President George W. Bush warned that nine percent (9%) of all federal judgeships were vacant and that seventeen percent (17%) of federal appellate court judgeships were vacant.  *See* Edwin Chen and Henry Weinstein, "Liberals Bracing for Quick Judicial Action by Bush," *The Los Angeles Times*, November 7, 2002.

12.     Chief Justice William H. Rehnquist also commented on the significant number of vacancies in the federal courts and their impact on the federal court system in his 2002 Year-End Report on the Federal Judiciary:

> The 2002 Year-End Report on the Federal Judiciary is my 17th.  As I look back on these reports, I am struck by the number of issues that seem regularly to crop up, or perhaps never go away -- judicial vacancies, the need for additional judgeships, judges' salaries, judicial appropriations . . . I spoke to delays in the confirmation process in my Year-End Report in 1997 and again last year.  As I have noted in my previous reports, to continue functioning effectively and efficiently, our federal courts must be appropriately staffed.  This means that judicial vacancies must be filled in a timely manner with well-qualified candidates.  We appreciate the fact that the Senate confirmed 100 judges during the 107th Congress.  Yet when the Senate adjourned, there were still 60 vacancies and 31 nominations pending.

13.     In addition, according to the 2002 Annual Report of Administrative Office of the U.S. Courts, appellate filings remained at a record level in 2002, increasing to 57,555 appellate filings that

year and breaking a prior record of 57,464 appellate filings in 2001. "Judicial vacancies continue
to be a serious concern," according to the Administrative Office of the U.S. Courts.

14.     As recently as May 9, 2003, President Bush described the vacancies in federal
judgeships as a "crisis in our judiciary," as "vacancies on the bench and overcrowded court dockets
are causing delays for citizens seeking justice." *See* Charles Hurt, Judicial Filibuster Rule Change
Faces High Hurdle in Senate," *The Washington Times*, May 10, 2003.

15.     Judicial Watch, Inc. has experienced substantial delays in the disposition of matters
pending before the federal courts, and before the D.C. Circuit in particular. In 2002, the median time
necessary to complete an appeal in the federal system, measured from the filing of a notice of appeal
to final disposition, was 10.7 months. However, appeals to the D.C. Circuit in which Judicial Watch,
Inc. has been involved during this same time period have taken much longer, as the following
examples of Judicial Watch, Inc. cases demonstrate:

a.      *Dolly Kyle Browning v. William Jefferson Clinton*, Appeal No. 01-5050 (D.C.
Cir.): notice of appeal filed on or about February 16, 2001; appeal concluded on or about August
1, 2002, a period of approximately 17.5 months.

b.      *W.L. Meng v. Bernard L. Schwartz*, Appeal No. 01-5275 (D.C. Cir.): notice
of appeal filed on or about August 7, 2001; appeal concluded on or about December 23, 2002, a
period of approximately 17 months;

c.      *Johnny Chung v. U.S. Department of Justice*, Appeal No. 01-5365 (D.C. Cir.):
notice of appeal filed on or about October 11, 2001; no ruling to date, despite matter being pending
for approximately 18 months;

d.      *United We Stand America v. Internal Revenue Service*, Appeal No. 02-5266 (D.C. Cir.): notice of appeal filed on or about August 26, 2002; no oral argument or ruling to date, despite matter being pending for approximately 8 months;

e.      *In re Richard B. Cheney, Vice President of the United States*, Appeal No. 02-5354 (D.C. Cir.); petition for writ of mandamus filed by Vice President Cheney on or about November 7, 2002; no ruling issued to date despite matter being pending for approximately 6 months; and

f.      *Sonya G. Stewart v. Donald Evans*, Appeal No. 02-5391 (D.C. Cir.): notice of appeal filed on or about December 2, 2002; no briefing schedule issued to date, despite matter being pending for more than 5 months.

16.     The D.C. Circuit is experiencing a particularly severe shortage of judges.  One-third of the D.C. Circuit's judgeships remain vacant.  Of the twelve (12) judgeships allotted to the D.C. Circuit (*see* 28 U.S.C. § 44), only eight (8) of these positions are occupied by active, full-time judges.  Two (2) of the seventeen (17) judges allotted to the Fifth Circuit are vacant.  *See* 28 U.S.C. § 44.

17.     The U.S. Congress has plainly expressed its intent that the timely and efficient administration of justice in the D.C. Circuit requires twelve (12) judges be appointed to that court, having set forth its intent in 28 U.S.C. § 44.  The U.S. Congress also has plainly expressed its intent that the timely and efficient administration of justice in the Fifth Circuit requires seventeen (17) judges be appointed to that court, again having set forth its intent in 28 U.S.C. § 44.  However, Congress's intent is being unconstitutionally thwarted, to Judicial Watch, Inc.'s substantial detriment, by a minority of U.S. Senators attempting to block President Bush's judicial nominees.

18.     On or about May 9, 2001, President Bush nominated former Assistant Solicitor General Miguel Estrada and Texas Supreme Court Justice Priscilla R. Owen to vacant judgeships on the D.C. Circuit and the Fifth Circuit, respectively.

19.     The judgeship to which President Bush nominated former Assistant Solicitor General Estrada has been vacant since approximately November 16, 1999, when former Circuit Judge Patricia M. Wald retired.  The judgeship to which President Bush nominated Justice Owen has been vacant since approximately January 23, 1997, when Circuit Judge William L. Garwood took on senior status.

20.     Both former Assistant Solicitor General Estrada and Justice Owen were rated "well qualified" by the American Bar Association.

21.     Nonetheless, the U.S. Senate failed to confirm both nominees.  The Senate Judiciary Committee rejected Justice Owen's nomination in 2002, and the U.S. Senate as a whole failed to vote on the merits of former Assistant Solicitor General Estrada's nomination at any point during that year.

22.     On or about January 7, 2003, President Bush renominated Justice Owen.  Assistant Solicitor General Estrada's nomination remains pending before the U.S. Senate by reason of the Senate's failure to vote on the merits of the nomination.

23.     Article II, Section 2 of the U.S. Constitution requires a simple majority of only fifty-one (51) votes for the U.S. Senate to confirm a judicial nominee.

24.     Based upon published reports, at least a simple majority of fifty-one (51) U.S. senators intend to vote in favor of the Estrada and Owen nominations.

25.     However, a minority of U.S. senators have employed and are continuing to employ Senate rules and procedures to prevent the U.S. Senate from confirming former Assistant Solicitor General Estrada and Justice Owen to federal judgeships.  Specifically, these senators have used and are continuing to use Senate Rule XXII to prevent Estrada's and Owen's confirmations.  The use of Senate Rule XXII to block judicial nominees is highly unusual, if not historically unprecedented.

26.     Rule XXII requires a supermajority of sixty (60) votes to end debate on a topic, a process known as "cloture."  By refusing to end debate on the two nominations, a minority of between thirty-nine (39) and forty-five (45) senators have prevented and are continuing to prevent former Assistant Solicitor General Estrada and Justice Owen from being confirmed.

27.     The application of Rule XXII to these nominations thus imposes an additional, unconstitutional requirement that judicial nominees be confirmed by a supermajority of sixty (60) votes rather than the simple majority of fifty-one (51) votes required by Article II, Section 2 of the United States Constitution.

28.     As recently as May 8, 2003, forty-three (43) senators voted against cloture on the Estrada nomination and forty-five (45) senators voted against cloture on the Owen nomination.

29.     Importantly, Senate Rule XXII was amended in 1959 to require an even larger supermajority of sixty-seven (67) votes for cloture on any motion to amend the Senate Rules.  In addition, Senate Rule V preserves all Senate Rules from one session to the next.  Consequently, the current session of the U.S. Senate can only amend Senate Rule XXII by a two-thirds supermajority.

30.     Given that thirty-nine (39) to forty-five (45) U.S. senators have voted against cloture on the Estrada and Owen nominations, it is extremely unlikely that any cloture vote on a motion to amend the sixty (60) vote requirement of Senate Rule XXII would ever succeed.  Senate Rules XXII

and V thus unconstitutionally deprive the current session of the U.S. Senate of the same jurisdiction and powers to establish rules governing its processes and procedures that its predecessor session had in 1959, when it enacted the two-thirds supermajority requirement for ending debate on motions to amend the rules.

31.    Judicial Watch, Inc. has suffered and is continuing to suffer significant, irreparable harm by reason of the unconstitutional application of Senate Rule XXII and Senate Rule V to the Estrada and Owen nominations.  But for the efforts of a minority of U.S. senators to use Senate Rules XXII and V to prevent the confirmation of former Assistant Solicitor General Estrada and Justice Owen to federal judgeships, these well-qualified judicial nominees would have been confirmed, and will be confirmed, for appointments to the D.C. Circuit and Fifth Circuit, respectively, and their confirmations would have lessened, and will lessen, the high vacancy rates and resulting significant and prejudicial delays experienced by Judicial Watch, Inc. in litigating in the federal courts.  The application of Senate Rule XXII and Senate Rule V to the Estrada and Owen nominations has thus impaired, and is continuing to impair, both Judicial Watch, Inc.'s public interest mission and the exercise of its First Amendment Rights.

WHEREFORE, Plaintiff Judicial Watch, Inc. respectfully requests that the Court enter judgment against Defendants:

(1)    declaring that Senate Rules XXII and V are unconstitutional as applied to judicial nominees, pursuant to 28 U.S.C. § 2201;

(2)    enjoining Defendants from continuing to prevent votes on the nominations of former Assistant Solicitor General Estrada and Justice Owen; and

(3)    granting any and all other relief the Court deems just and proper.

Respectfully submitted,

JUDICIAL WATCH, INC.


_____
Larry Klayman, Esq.
D.C. Bar No. 334581



_____
Paul J. Orfanedes, Esq.
D.C. Bar No. 429716
Suite 500
501 School Street, S.W.
Washington, DC 20024
(202) 646-5172

Attorneys for Plaintiff